WO                                                                                    SKC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Melinda Gabriella Valenzuela,<br><br>Plaintiff,<br><br>v.<br><br>Corizon Health, et al.,<br><br>Defendants. | No. CV 18-00211-PHX-MTL (MHB)<br><br>**ORDER** |

Plaintiff Melinda Gabriella Valenzuela, who is currently confined in the Arizona State Prison Complex (ASPC) Florence in Florence, Arizona, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 8.) Defendants Corizon Health, Inc. ("Corizon"), Facility Health Administrator (FHA) Kelli Rogers, and former Arizona Department of Corrections (ADC) Director Charles Ryan move for summary judgment. (Doc. 85.) Plaintiff was informed of her rights and obligations to respond pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) (Doc. 94), and she opposes the Motion for Summary Judgment. (Doc. 100, 125.) Defendant Ryan also filed a Motion to Dismiss based on settlement (Doc. 106), and Plaintiff opposes the Motion to Dismiss (Doc. 107) and prematurely moves for Rule 60(b) relief. (Docs. 108, 110.)

The Court will grant Defendants' Motion for Summary Judgment and deny as moot Ryan's Motion to Dismiss and Plaintiff's Rule 60(b) Motions.

. . . .

. . . .

**I. Background**

**A. Plaintiff's Prior Actions and Vexatious Litigant Order**

Plaintiff has been incarcerated for repeated criminal violations since June 2001, and she has in that time filed more than 200 civil rights actions in this Court against jail or prison personnel, which have been documented through November 2017 in four separate vexatious litigant orders. *See* Doc. 9 in CV 02-02452-PHX-JAT (DKD) (57 cases); Doc. 5 in CV 04-00698-PHX-JAT (DKD) (76 cases); Doc. 10 in CV 13-01366-PHX-NVW (MHB) (47 cases); Doc. 10 in CV 16-00951-PHX-NVW (38 Cases).

On August 18, 2004, the Court issued the second of these orders, requiring Plaintiff to meet a series of pre-filing requirements, including the filing of a Motion for Leave to File, before filing a pro se action in federal court. (Doc. 5 in CV 04-00698.) On December 20, 2013, the Court issued its third vexatious litigant order, adding the requirement that Plaintiff must file copies of her grievances and grievance responses related to her claim(s) with her Motion for Leave to File. (Doc. 10 in CV 13-01366.)

On November 27, 2017, before Plaintiff filed her Complaint in this action, the Court issued its fourth vexatious litigant order. (Doc. 88 in CV 16-00951-NVW). The Court added additional pre-filing requirements, including that for medical claims, Plaintiff must file "documentation of the medical condition(s) and/or injuries that goes beyond her own allegations in the complaint." (*Id.*) The Court explained that this evidence "may be in the form of medical records or sworn affidavits from medical professionals that document the conditions or injuries alleged in the complaint." (*Id.*)

**B. Plaintiff's Motion to File**

At the time she filed her original Complaint, Plaintiff filed a Motion for Leave to File and an Application to Proceed In Forma Pauperis, which the Court granted, finding that Plaintiff had met the "imminent danger" exception to the "Three Strikes Provision" of the Prison Litigation Reform Act (PLRA) and had included copies of her relevant grievances and a lab test supporting her claimed gluten allergy, which underlies her medical claims in this action. (Doc. 12; *see* Docs 1, 7.)

### C. Plaintiff's Complaint

On screening of Plaintiff's one-count Second Amended Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment medical care claims against Defendants Corizon, Rogers, and Ryan based on their alleged refusals to provide her a no gluten diet and required these Defendants to answer these claims. (Doc. 10.) The Court dismissed the remaining claims and Defendants. (*Id.*)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*,

477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Relevant Facts[1]

#### A. Plaintiff's Dietary Issues

On January 27, 2012, Plaintiff had a lab test performed for reaction to gluten, and the test showed she had <0.08 levels of IgE antibodies, which indicated a negative result. (Doc. 86 (Defs. Statement of Facts) ¶ 1; Doc. 86 at 9.)[2] On February 28, 2012, Plaintiff was released on parole. (Doc. 86 ¶ 2.)

On April 9, 2014, Plaintiff was readmitted to the prison system at ASPC-Alhambra. (Doc. 86 ¶ 3.) A Transfer Summary/Continuity of Care form prepared for Plaintiff that day by Registered Nurse (RN) Grafia listed as "dietary restrictions" a combination soft/vegetarian/lactose free diet. (Doc. 86 at 13.)

On April 24, 2014, Nurse Practitioner (NP) McKamey approved Plaintiff for a "no gluten diet" from approximately August 21, 2014 to August 20, 2015. (*Id.* at 15.)[3]

---

[1] Although the Court informed Plaintiff of the requirements of a response, and Plaintiff filed a Response and a Separate Statement of Facts (Docs. 101, 102), Plaintiff failed to comply with the Court's Order and Local Rule 56.1(b), which states that "for each paragraph of the moving party's separate statement of facts, [the opposing party must provide] a *correspondingly numbered paragraph* indicating whether the party disputes the statement of fact set forth in that paragraph. LRCiv 56.1 (b) (emphasis added). (*See* Doc. 94 at 2.) Instead, Plaintiff provided only her own, independently-numbered paragraphs, in which she either rewrites entire paragraphs of Defendants' facts without clearly agreeing to or refuting specific facts, or she attempts to add facts without separately setting them forth as additional facts. The court is mindful of the Ninth Circuit's overarching caution in this context that district courts are to "construe liberally motion papers and pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Thus, where the Court can readily identify relevant controverting facts, and Plaintiff has identified where in the record these facts find support, the Court will include these facts. The Court will otherwise consider Defendants' facts undisputed. Additionally, the Court will not attempt to locate additional facts that Plaintiff has not separately set forth as additional facts. (*See* Doc. 94 (*Rand* Order).)

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

[3] It is not clear from the record evidence what prompted this approval or why it was only set to take effect four months later.

On February 13, 2015, NP McKamey discontinued Plaintiff's no gluten diet, noting "IM caught fishing bread from another inmate" and "Labwork 2012 documents no allergy to gluten." (*Id.*)

On March 26, 2015, Plaintiff submitted a medical grievance appeal to then-Director Ryan regarding the discontinuation of her no gluten diet, and Ryan denied the appeal, noting that Plaintiff's diet had been discontinued by a medical provider because Plaintiff was caught "fishing" bread from another inmate and because Plaintiff's 2012 laboratory test showed "no evidence of allergy to gluten." (*Id.* at 17.) Ryan noted that "the decision to order special diets is a clinical decision based on the prescriber's clinical findings and medical judgment," and is not "based on the dictates of the patient." (*Id.*)

On April 6, 2017, Plaintiff submitted a health needs request (HNR), stating "I need to please see the ATP to get the diet for the allergy I have. I was also told it could help alot [sic] of my issues." (Doc. 86 at 88.)

On April 29, 2015, Plaintiff began a vegan diet, and, on April 29, 2017, the vegan diet was renewed. (*Id.* at 26.)

On May 2, 2017, Nurse Donna Mendoza saw Plaintiff in response to a variety of issues Plaintiff had raised in eleven separate HNRs, including a request for a no gluten diet. (Doc. 86 at 37.) Nurse Mendoza noted that a previous gluten allergy test was negative but, upon consultation with NP Ende, she ordered a new lab test "to ensure if there is a gluten allergy." (*Id.* at 40.)

On May 8, 2017, Plaintiff had a "gluten, IgG (RAST)" lab test to determine if she had a gluten allergy that required a gluten-free diet, and the result was 3.9, which was noted as "high." (*Id.* at 91.)

On May 17, 2017, before this test was reviewed, Dr. Khan prescribed a special diet for Plaintiff to receive snacks, consisting of graham and/or saltine crackers, when taking her psychiatric medications at mornings and bedtimes. (Doc. 86 ¶¶ 13−14.)

On May 20, 2017, NP Ende reviewed the results of Plaintiff's gluten test and wrote "abnormals noted, no action required currently, will address at next appointment." (*Id.* at 92.)

On September 13, 2017, Dentist L. Russell approved Plaintiff for a mechanical soft diet based on "TMJ/Lower Jaw, Paresthesia." (*Id.* at 55.) At various times, Plaintiff was also on renal dialysis and clear liquid diets. (Doc. 86 ¶ 11.) Except for the clear liquid diet, none of these diets contained limitations on wheat or gluten. (*Id.* ¶ 12.)

On September 22, 2017, Plaintiff filed an Inmate Informal Complaint Resolution in which she complained that she had asked medical to renew her "allergy diet" due to her "allergy to milk and wheat," and medical had just "blown it off and not done anything." (Doc. 89 at 94.) She requested to have her allergy diet reordered. (*Id.*)

On September 28, 2017, Plaintiff saw NP Nancy Smith regarding labs for her transgendered care, and NP Smith reviewed the labs, discussed Plaintiff's complaints of "feeling bloated and emotional," and educated Plaintiff on the side effects of her treatment. (*Id.* at 41.) Plaintiff also wanted to discuss her various special needs orders (SNOs), and Smith noted that Plaintiff "also has vegan diet in place, but [Plaintiff] wants allergy diet, has a lab work to support Gluten allergy 5/2017. Current Vegan diet in place until 4/29/18 — [Plaintiff] tolerating diet with no allergy S/S, weight stable." (*Id.*)

On October 11, 2017, Plaintiff was seen in medical for a "multi-disciplinary staffing meeting," attended by the "FAA, AFA, medical director and corrections . . . to review recent HNRs, medications, and SNO's." (*Id.* at 46.) The FAA notified Plaintiff that all SNOs were then discontinued and staff would go over each one individually to assess validity and need. (*Id.*) These included SNOs for

> Vegan Diet, Dental/Mechanical Soft Fine Chop diet with AM & PM snack (maintained by psych), Perl-wash, dial soap, derma vera, wipes, large diapers, baby powder, cerve lotion, back support, knee support, right wrist brace, side restraint, cane, shower chair, tape, cavi-wipes, hand sanitizer, extra toilet paper, wedge, low bunk/low tier.

(*Id.*)  Upon review, Plaintiff was to keep the right wrist brace, dial soap, wipes, and side restraints.  (*Id.*)  Nursing was also concerned that Plaintiff was consuming more medications than she needed because she was requesting refills prior to refill dates, and her medications were therefore changed to "watch-swallow."  (*Id.*)  Plaintiff was to be seen in the clinic the next day for stomach, back, foot, and breast issues.  (*Id.*)

On October 29, 2017, Assistant FHA (AFHA) Diana Labar responded to Plaintiff's September 22, 2017 Informal Complaint regarding her allergy diet, and AFHA Labar noted, "You were seen in a multidisciplinary meeting on 10/11/17 at which time all of your diet concerns were addressed."  (*Id.* at 95.)

On November 8, 2017, Plaintiff filed an Inmate Grievance in which she complained that she had submitted multiple health needs requests (HNRs) and filled out the form to receive an "allergy diet" based on her allergies to milk and wheat, but these complaints had been ignored.  (Doc. 102-1 at 38.)

On November 16, 2017, FHA Rogers responded to Plaintiff's November 8, 2017 Inmate Grievance, stating, "After review of your medical record; it has been discovered the lab test has shown that you are not allergic to Gluten and so the allergy diet was discontinued.  You are however on a dental diet and it is active."  (Doc. 102-2 at 2.)

On December 14, 2017, Plaintiff was approved for the no gluten diet by Dr. P. Hopkins, M.D.  (*Id.* at 6.)  The diet was active until December 18, 2018.  (Doc. 86 ¶ 27.)

**B.     Defendant Rogers**

At the relevant time of this action, Defendant Rogers was employed by Corizon as the FHA at ASPC-Lewis.  (*Id.* ¶ 29.)  As the FHA, Rogers' duties included investigating and responding to inmate grievances regarding medical issues.  (*Id.* ¶¶ 30−31.)  Rogers was not, herself, a medical provider and had no authority to make clinical decisions, prescribe medical diets, or question the decisions of unit medical providers.  (*Id.* ¶ 34.)  Rogers does not remember investigating or responding to Plaintiff's diet-related grievances, but she ordinarily responds to requests for no gluten diets by looking for a positive IgG or RAST test in the medical chart.  (*Id.* ¶ 35.)  Based on Rogers' review of

her response to Plaintiff's November 8, 2017 Inmate Grievance, Rogers believes she relied on the information contained in NP McKamey's February 2015 gluten diet discontinuation order to deny Plaintiff's request for a no gluten diet and that if Plaintiff's medical records contained a positive IgG test, she overlooked this during her investigation. (*Id.* ¶¶ 35−38.) Rogers recalls having several face-to-face encounters with Plaintiff to resolve other medical issues, and she remembers these as being congenial. (*Id.* ¶ 39.)

### C. Defendant Ryan

At the relevant time of this action, Defendant Ryan was the ADC Director, the duties of which are set forth in Arizona Revised Statutes § 41-1604(A)(7). (*Id.* ¶ 41.) Ryan is not a medical provider and was not personally involved in providing healthcare to prisoners; instead, Ryan oversaw the delegation of such duties to ADC staff and contract employees pursuant to his delegation authority under Arizona Revised Statutes § 41-1604(A)(7) and (B)(2)(D). (*Id.* ¶¶ 42−43.)

Since becoming the Director in 2009, Ryan has always delegated the responsibility of responding to Inmate Grievance Appeals to other staff. (*Id.* ¶ 45.) During the March 2015 timeframe, he delegated this responsibility to the Assistant Director of the Health Services Contract Monitoring Bureau, Richard Pratt. (*Id.*) As such, Ryan had no personal knowledge of Plaintiff's March 2015 Inmate Grievance Appeal. (*Id.*)

After October 2016, ADC Department Order (DO) 802 was revised to make the decision of the FHA final as to all medical grievances available within ADC; therefore, after this date, Ryan had no further role in responding to medical grievances. (*Id.* ¶ 46.) Ryan is not personally familiar with Plaintiff or her medical issues and complaints, including those related to her requests for a no gluten diet. (*Id.* ¶ 47.)

### IV. Motion for Summary Judgment

To prevail on an Eighth Amendment medical claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to this analysis: an objective prong and a subjective prong. First, as to the objective prong,

a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, as to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. To satisfy the knowledge component, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. But the deliberate-indifference doctrine is limited; an inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citations omitted); *see Estelle*, 429 U.S. at 106 (negligence does not rise to the level of a constitutional violation). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at

1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

### A. Serious Medical Need

Defendants argue that Plaintiff cannot demonstrate she had a serious medical need. (Doc. 85 at 9−10.) To support this argument, Defendants rely on facts not previously set forth in their Statement of Facts or evidence to distinguish between Plaintiff's 2012 IgE lab test and her May 2017 IgG lab test, thereby attempting to discount the relevance of the latter test results. (*Id.* at 10.) They argue that in 2012, Plaintiff was tested for gluten "allergy," and in 2017 she was only tested for "gluten sensitivity," which they maintain is not a serious medical need. (*Id.*)[4] Defendants then cite to online sources to support that the symptoms of gluten sensitivity (as opposed to gluten allergy) "range from headaches and nausea to depression, anxiety, and hyperactivity, or simply just fatigue, bloating, or mood changes after eating." (*Id.*) They also argue that Plaintiff has never shown she suffered a serious reaction to gluten products at any time and therefore cannot demonstrate a serious medical need. (*Id.*)

Defendants' attempt to rely on facts not properly set forth on the record violates both the Federal Rules of Civil Procedure, which require a party moving for summary judgment to cite to "particular parts of the record, including depositions, documents, electronically stored information, affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(a)), and the corresponding Local Rules, which require the moving party to set forth in the

---

[4] Defendants' own statements of fact and other evidence about the purpose and significance of these tests appear to contradict Defendants' arguments. For example, in their Statement of Facts, Defendants state that the purpose of Plaintiff's 2012 "IgE" test was to "analyze her *sensitivity* [not allergy] to gluten" (Doc. 86 ¶ 1) (emphasis added). Additionally, the lab report from Plaintiff's May 2017 IgG or "RAST" test states that the test was ordered "to determine if Inmate has a gluten *allergy* [not sensitivity] and requires a gluten free diet" (Doc. 86 at 91) (emphasis added). Moreover, regardless of the distinction Defendants attempt to make, Defendant Rogers testified in her declaration that, when researching inmate requests for a gluten-free diet, she looked for "a positive gluten IgG (RAST) test in the medical chart" and if she finds "abnormal" results—which the record shows applied in Plaintiff's case—she informs a provider. (Doc. 86, Ex. N (Rogers Decl.) ¶ 9.)

- 10 -

1 separate statement of facts "each material fact on which the party relies in support of the
2 motion." LRCiv. 56.1(a). Defendants' further attempt to rely merely on the arguments of
3 counsel to interpret the significance of Plaintiff's medical findings is also not well taken.
4 *See Barcamerica Int' l USA Trust v. Tyfield Imps., Ind.*, 289 F.3d 589, 593 n. 4 (9th Cir.
5 2002) (arguments and statements of counsel are not evidence) (citation omitted); *Comer v.*
6 *Schriro*, 480 F. 3d 960, 988 (9th Cir. 2007).

In addition to these defects, Defendants arguments that Plaintiff cannot show she had a serious medical need are substantively deficient. First, the range of symptoms Defendants, themselves, claim can result from gluten sensitivity—i.e., headaches, nausea, depression, bloating, mood changes—are ones that can significantly affect an individual's daily activities. *See McGuckin*, 974 F.2d at 1059−60. Additionally, NP Ende found the "abnormals" on Plaintiff's May 2017 gluten test worthy of comment and treatment—even if not immediate intervention—and Dr. Hopkins subsequently approved Plaintiff for a no gluten diet. (Doc. 86 at 92; 102-2 at 6.) Moreover, Plaintiff alleged in her verified pleadings that eating gluten products "nearly caused her to choke to death" and led to her experiencing several episodes of swelling and hives. (Doc. 35 at 2, 3.) On this record, there is at least a triable issue of fact that Plaintiff had a serious medical need. The analysis therefore turns on the second prong, whether Defendants showed deliberate indifference to that need.

### B. Deliberate Indifference

Where there are numerous defendants who allegedly acted with deliberate indifference, the Court must take an individualized approach that accounts for the duties, discretion, and means of each defendant. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The Court must look at "whether [each] individual defendant was in a position to take steps to avert the [harm] but failed to do so intentionally or with deliberate indifference." *Id.*

27 . . . .

28 . . . .

### 1. Defendant Rogers

Defendants argue that Plaintiff's claim against Defendant Rogers fails as a matter of law because Rogers' only involvement in Plaintiff's medical care was to deny Plaintiff's medical grievance, which they argue the Ninth Circuit has made clear is insufficient to constitute a constitutional violation. (Doc. 85 at 12.) Defendants rely on *Shehee v. Luttrell*, 199 F. 3d 295, 300 (6th Cir. 1999), for the proposition that, where a defendant's only involvement in a constitutional deprivation is to deny an administrative grievance, failure to provide a remedy does not constitute a constitutional violation. (*Id.*)

Defendants' reliance on *Shehee*, a Sixth Circuit case, is misplaced. Under Ninth Circuit law, a defendant can be held liable for a failure to act. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). As such, a prison administrator shows deliberate indifference to a prisoner's medical needs if he or she "knowingly fail[s] to respond to an inmate's requests for help." *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014). When responding to medical grievances, non-medical administrators may rely on, and are not required to second-guess, the judgments of qualified medical professionals. *Id.* But if prison officials "choos[e] to rely upon a medical opinion which a reasonable person would likely determine to be inferior," their actions may amount to "the denial of medical treatment[] and the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992) *overruled in part on other grounds as recognized in Snow*, 681 F.3d at 986.

Here, the evidence shows that Rogers' only involvement in Plaintiff's medical care was to respond to Plaintiff's November 8, 2017 Inmate Grievance, in which Plaintiff complained that medical staff had repeatedly ignored her HNRs for an "allergy diet" based on her alleged allergies to milk and wheat. (Doc. 102-1 at 38; Doc. 102-2 at 2.) Rogers' stated reason for denying this grievance was that, based on her review of Plaintiff's medical records, Plaintiff's allergy diet had been discontinued due to a lab test showing Plaintiff was not allergic to gluten. (Doc. 102-2 at 2.) Rogers testifies that she believes she relied on the information contained in NP McKamey's February 2015 order discontinuing

1 Plaintiff's no gluten diet based on Plaintiff's 2012 lab work and a report that Plaintiff had
2 been caught "fishing bread from another inmate" to determine that Plaintiff did not require
3 a no gluten diet. (Rogers' Decl. ¶ 12.) She further testifies that, if a positive IgG (RAST)
4 test was also in Plaintiff's medical records, she must have overlooked this test. (*Id.* ¶ 13.)

This evidence shows, at most, that Rogers was negligent in failing to discover Plaintiff's May 2017 lab test and in consequently failing to bring the abnormal test results to the attention of Plaintiff's medical providers, who, unlike Rogers, could have prescribed a no gluten diet. Because these facts only demonstrate an isolated instance of neglect that was subsequently remedied by medical staff, however, they are insufficient to show that Rogers knew of and was deliberately indifferent to Plaintiff's serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332 (9th Cir. 1990) ("[i]n determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect").

Plaintiff argues in her Response that Rogers "did not properly investigate" Plaintiff's grievance or she would have seen and properly dealt with Plaintiff's May 2017 lab test. (Doc. 101 at 16.) Inferring in Plaintiff's favor that Plaintiff's May 2017 lab test was in Plaintiff's medical files at the time of Rogers' investigation, and Rogers failed to properly review these files, these facts do not change the above analysis. As noted, absent evidence that Rogers was aware of and deliberately disregarded Plaintiff's most recent lab test, Roger's one-time improper investigation, while negligent, is insufficient to show deliberate indifference. Plaintiff also argues that Rogers personally addressed Plaintiff on multiple occasions and "was aware consciously that Plaintiff had an allergy to gluten." (*Id.* at 17.) But this bare assertion, absent any facts about when these encounters occurred or what Plaintiff conveyed to Rogers at the time, also does not create a genuine issue of material fact that Rogers had personal knowledge of and deliberately disregarded Plaintiff's gluten allergy. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"); *Nilsson v. City*

*of Mesa*, 503 F.3d 947, 952 n.2 (9th Cir. 2007) ("a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact"). The Court will grant Defendants' Motion for Summary Judgment as to Defendant Rogers.

### 2. Defendant Ryan

Defendants argue that Plaintiff's claim against Defendant Ryan fails as a matter of law because, at the time Ryan denied Plaintiff's March 26, 2015 Grievance Appeal, there was no evidence that Plaintiff had a gluten allergy that required her to receive a no gluten diet. (Doc. 85 at 13−14.) They further argue that this claim fails due to a lack of personal participation because there is no evidence Ryan had any further involvement in responding to medical grievances after October 2016, when DO 802 was revised to give the FHA, not the ADC Director, final review of medical grievances. (*Id.* at 14.)

To the extent Plaintiff seeks to sue Ryan in his personal capacity, it is undisputed that there was no evidence in Plaintiff's medical records that Plaintiff had a gluten allergy at that time Ryan denied Plaintiff's March 2015 Grievance Appeal. Therefore, Plaintiff cannot show that Ryan's denial of that appeal was deliberately indifferent to any known serious medical needs. Moreover, as a non-medical administrator, Ryan was entitled to rely on the judgments of qualified medical professionals when responding to medical grievances, *Peralta*, 744 F.3d at 1086, and there are no facts showing it was unreasonable in this instance for Ryan to rely on the clinical findings and medical judgement of NP McKamey who had discontinued Plaintiff's no gluten diet. (Doc. 86 at 17.) Ryan also cannot be held vicariously liable for the denial of any of Plaintiff's later grievances, when Ryan no longer had any role in the medical grievance process. There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated a plaintiff's constitutional rights does not impose liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, the Court will grant summary judgment to Ryan in his personal capacity.

### 3. Defendants Ryan (Official Capacity) and Corizon

To prevail on a claim against Ryan in his official capacity or against Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell*, 436 U.S. at 690−94. *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Accordingly, Plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, Plaintiff must demonstrate that (1) she was deprived of a constitutional right; (2) Ryan and/or Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

As set forth above, to support an Eighth Amendment deprivation, a prisoner must demonstrate a serious medical need and deliberate indifference to that need. *Jett*, 439 F.3d at 1096. Because the Court has already found questions of fact that Plaintiff had a serious medical need, the constitutional violation prong of the *Monell* analysis hinges on whether anyone showed deliberate indifference to that need.

Defendants argue that Plaintiff cannot show that Corizon or any of its agents were both aware of and deliberately indifferent to any serious medical needs of Plaintiff, including her need for a no gluten diet. (Doc. 85 at 10−11.) Defendants point out that, as of February 13, 2015, when NP McKamey discontinued Plaintiff's no gluten diet, Plaintiff's lab results from 2012 did not show Plaintiff had a gluten allergy, and there was no medical evidence to support that she needed this diet. (*See* Doc. 86 at 9, 13.) Then, on May 2, 2017, after Plaintiff again complained of having a gluten allergy,[5] Nurse Mendoza

---

[5] Defendants state that NP Smith saw Plaintiff in response to a May 1, 2017 HNR requesting a no gluten diet (Doc. 85 at 11), but they do not cite to any evidence of this, and the Court was unable to locate any HNR Plaintiff filed on that date. The only HNR in evidence that appears to relate to Plaintiff's gluten issues is Plaintiff's April 6, 2017 HNR—filed one month earlier—in which Plaintiff wrote, "I need to please see the ATP to get the diet for the allergy I have. I was also told it could help alot [sic] of my issues." (Doc. 86 at 88.)

ordered a new gluten test (*see id.* at 37, 40), after which NP Ende reviewed the test results but did not perceive them as being serious enough to warrant immediate intervention. (Doc. 85 at 11.)

Defendants further note that, when NP Smith saw Plaintiff on September 27, 2017, Smith noted that Plaintiff was doing well on the vegan diet and, despite Plaintiff's May 2017 lab results, there were no signs or symptoms that Plaintiff had a gluten allergy, and Plaintiff's weight was stable. (*Id.*; *see* Doc. 89 at 94.) Defendants argue that this evidence shows that neither NPs Ende or Smith nor any other provider perceived of and deliberately disregarded a serious risk to Plaintiff's health. (Doc. 85 at 11.)

Defendants have met their initial burden of showing that no Corizon providers knew of and were deliberately indifferent to any serious medical needs arising from Plaintiff's gluten allergy. In her Response, Plaintiff argues that she suffered adverse reactions to gluten during the period between February 13, 2015 and December 2017, when she was denied a no gluten diet. (Doc. 101 at 14−15.) In support, she asserts that she "had to have I.C.S. activated due to allergy reaction," but she provides no facts about when this happened, how her "allergy reaction" was tied to gluten, or who was made aware of this incident to create a genuine issue of material fact that anyone knew her gluten allergy posed a substantial risk of serious harm and nonetheless deliberately disregarded this risk.[6]

Plaintiff also argues that NP Ende knew the results of her May 2017 lab test and Corizon knew she qualified for a no gluten diet, but "they simply allowed NP Ende to ignore the lab test when the test was specifically ordered to see if she needed the [no] gluten diet." (*Id.* at 15−16.) Based on the evidence presented, it is not clear that NP Ende or any other provider followed up on Plaintiff's May 2017 lab results, once reviewed, or discussed them with Plaintiff as NP Ende had noted to do "at next appointment." (*See* Doc. 86 at 92.) There is simply no evidence anyone took any action on these results for the next four

---

[6] In her Statement of Facts, Plaintiff also includes instances of choking and swallowing issues that occurred in 2018 and 2019, after the operative time of her Second Amended Complaint and after she was already on a no gluten diet, which are unrelated to the claims in this action. (See Doc. 102 ¶¶ 41−44.)

months until Plaintiff filed her September 22, 2017 Inmate Informal Complaint Resolution, complaining that she had asked medical to renew her "allergy diet" due to her "allergy to milk and wheat," and medical had just "blown it off and not done anything." (Doc. 89 at 94.) But Plaintiff also fails to produce any evidence about her symptoms or what she told medical staff during this time that would create a genuine issue of material fact that any medical personnel knew she faced a substantial risk of serious harm absent a no gluten diet, and they deliberately disregarded that risk. Instead, the evidence shows, and Plaintiff does not dispute, that when NP Smith saw Plaintiff on September 28, 2017, Smith found that Plaintiff was doing well on her vegan diet and had no signs or symptoms of allergy. (Doc. 86 at 41.) Plaintiff also acknowledges in her Response that she was on a vegan diet at that time, the vegan diet "consisted of vegetables and soy meat[ and n]o gluten items," and in May 2017, she started getting a daily snack of peanut butter and chips "that was substituted in place of crackers due to her allergy to gluten." (Doc. 101 at 14−15.)

In summary, Plaintiff fails to create a triable issue of fact that any Corizon medical providers or other prison staff both knew of and were at any time deliberately indifferent to a substantial risk of serious harm to Plaintiff from not having a no gluten diet. Absent this showing, Plaintiff cannot demonstrate a constitutional violation, and her *Monell* claims against Ryan and Corizon fail as a matter of law. Accordingly, the Court will grant summary judgment to Ryan and Corizon on these claims and will not discuss the remaining *Monell* factors.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants Corizon, Rogers, and Ryan's Motion for Summary Judgment (Doc. 85) and Defendant Ryan's Motion to Dismiss (Doc. 106).

(2) Defendants Corizon, Rogers, and Ryan's Motion for Summary Judgment (Doc. 85) is **granted**, and this action is **dismissed**.

(3) Defendant Ryan's Motion to Dismiss (Doc. 106) and Plaintiff's Rule 60(b) Motions (Docs. 108, 110) are **denied as moot**.

(4) This action is **dismissed with prejudice**. The Clerk of Court must enter judgment accordingly.

Dated this 2nd day of March, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge